## John H. Pearson *versus* Henry Purkett.

Under *St.* 1809, *c.* 120, § 2, [Revised Stat. *c.* 28, § 70,] regulating the appointment and duties of the inspector general of pickled fish, an action lies in the first instance against him, for the default of one of his deputies.

The *St.* 1809, *c.* 120, § 2, provides, that the inspector general shall be answerable for the official conduct of his deputies, and that he shall take bonds from them to himself and successor in office in a sum not exceeding $1000. [Altered by Revised Stat. *c.* 28, § 70.] It was *held*, that the liability of the inspector general for the default of one of his deputies, was not limited to the amount of the penalty prescribed by the statute as the extent of the bond of such deputy.

In an action against the inspector general for damages sustained through the default of a deputy in branding as Cargo No. 1, a quantity of fish which the plaintiff purchased and exported to Baltimore, but which, as the plaintiff alleged, were not well struck with salt, it was *held*, that evidence, that the fish had been examined and passed inspection at Baltimore, was not conclusive against the claim of the plaintiff.

In such action it was *held*, that the difference between the actual value of the fish in question at Baltimore, and the value of fish of the quality and in the condition indicated by the brand, at the same time and place, was the measure of the damages recoverable by the plaintiff, the fish having been exported within a reasonable time after the inspection, having been exposed to no extraordinary cause of damage, and having been exported to no remote or unusual place for the exportation of the like kind of fish.

The inspector general is liable for damages occasioned by a want of reasonable skill, care, and fidelity on the part of his deputies, in the discharge of their duties; but he is not responsible for their mere errors of judgment.

THIS was an action upon the case, brought under *St.* 1809, *c.* 120, § 2, against the defendant, who was the inspector general of pickled fish, for the default of Isaac Peirce, one of his deputies.

By the 3d section of that statute it is provided, that it shall be the duty of the inspector general, or his deputies, or some one of them, to see that salmon, mackerel, shad, and all other kinds of split pickled fish, or fish for barrelling, intended for exportation, have been well struck with salt or pickle in the first instance, and preserved sweet, free from rust, taint or damage; and that those of the best quality, caught in the right season, to be most approved and free from damage, shall be branded Cargo No. 1.

The declaration alleged, that Peirce branded 500 barrels of herring as Cargo No. 1, for bounty, *which were not well struck with salt or pickle,* &c. ; that the plaintiff purchased

the same, relying upon the brand, for exportation, and sent them to Baltimore ; and that he suffered great loss thereby, &c.

At the trial, before *Putnam* J., it was proved, that it was easy for any person of skill to have determined whether or not the fish were well struck with salt or pickle, by examining them before they were packed.

The judge instructed the jury, among other things, that the branding of the fish, Cargo No. 1, for exportation, was a declaration on the part of the inspector, to all persons who might become purchasers of such fish, that they were of the first quality, that they had been well struck with salt or pickle in the first instance and had been preserved free from damage, and that they were fit for transportation to such ports or places as that kind of fish were usually carried to ; that if the fish so branded became, within a reasonable time, unmerchantable, without any unreasonable or improper exposure and usage, the inspector who branded them was answerable for the damage sustained by the purchaser ; that it was the duty of the inspector general, or his deputy, to see that the fish which passed his inspection were properly struck in the first instance, and caught in the right season ; and that he was liable for every error or neglect of all who were employed in taking, striking, culling, inspecting, and packing the fish.

The jury found, that the fish were not well struck with salt or pickle, and rendered a verdict in favor of the plaintiff, for the sum of $668·75.

The defendant moved for a new trial, for the following causes :

1. Because the judge instructed the jury, that this action lay in the first instance against the inspector general, without the plaintiff having first brought his suit and established his claim against the deputy inspector, for whose default the suit was brought

2. Because tne jury were instructed, that, in a suit against the inspector general for the default of his deputy, they might find a larger sum in damages than the amount in which the inspector general could by law take bonds of his deputy.

3. Because the judge charged the jury, that the fact, that

VOL. XV.　　　　23

the fish had been sent to a foreign market, had there been opened and examined, and had passed inspection there, did not exonerate the inspector general here from liability on his deputy's brand.

4. Because the judge charged the jury, that, if they found for the plaintiff, they should estimate his damages at as much as his fish would have yielded him if they had arrived at market in good condition ; whereas he could, at most, legally recover only an indemnity, that is, the cost and charges of the article, with interest thereon.

5. Because the judge instructed the jury, that the inspector was responsible at all events, that the fish that passed his inspection were properly struck in the first instance and caught in the right season ; and that he was liable for every error or neglect of all who were employed in taking, striking, culling, inspecting and packing the fish. Whereas the jury should have been instructed, that the inspector was bound to appoint men skilful in the business of packing and inspecting fish, and then was only liable for the exercise of reasonable skill and diligence on the part of his deputies in taking the fish from the vessel, culling, inspecting and packing them ; and that if they exercised reasonable skill and judgment, they were not responsible for mere error of judgment.

If the instructions were wrong, the verdict was to be set aside and a new trial granted ; otherwise judgment was to be rendered on the verdict.

*March 19th.*    *S. Hubbard* and *Peabody*, for the defendant, as to the 4th exception, contended that the measure of damages was the difference between the sound and unsound price of the fish at this market, at the time of the plaintiff's purchase, and they cited *Gilpins* v. *Consequa,* 1 Peter's C. C. R 85 ; *Willings* v. *Consequa,* ibid. 172 ; *Youqua* v. *Nixon,* ibid 221 ; *Amiable Nancy,* 3 Wheat. 546 ; *Conard* v. *The Pacific Ins. Co.* 6 Peters's Sup. Court R. 262, 274 ; *Kennedy* v. *Whitwell,* 4 Pick. 466 ; *Shaw* v. *Nudd,* 8 Pick. 9 ; *Sargent* v. *The Franklin Ins. Co.* 8 Pick. 90 ; as to the 5th exception they cited *Seaman* v. *Patten,* 2 Caines's R. 312, and cases there cited ; or *Minor* v. *The Mechanics Bank of Alexandria,* 1 Peters's Sup. Court R. 64 ; *Tompkins* v. *Sands,*

6 Wendell, 462; *Jenkins* v. *Waldron*, 11 Johns. R. 114;
*Sparhawk* v. *Bartlet*, 2 Mass. R. 188; *American Bank* v.
*Adams*, 12 Pick. 303.

*C. P. Curtis* and *E. G. Loring*, for the plaintiff, as to the
first exception, cited *Cameron* v. *Reynolds*, Cowp. 403;
*Lane* v. *Cotton*, 1 Salk. 18; 3 Dane's Abr. 62, 63, 64,
*Draper* v. *Arnold*, 12 Mass. R. 449; as to the 3d exception,
*Clintsman* v. *Northrop*, 8 Cowen, 45; as to the 4th excep-
tion, *Bell* v. *Cunningham*, 3 Peters's Sup. Court R. 69:
*Shaw* v. *Nudd*, 8 Pick. 9; *Clark* v. *Pinney*, 7 Cowen, 681;
*Hallett* v. *Novion*, 14 Johns. R. 273; and as to the 5th
exception, *Warne* v. *Varley*, 6 T. R. 443.

SHAW C. J. delivered the opinion of the Court. The
statute upon which this action is brought, *St.* 1809, *c.* 120,
which is now in force, is the revision and reënactment of
several prior acts, some of which trace their origin to an early
period of the Provincial government. The second section
of this statute, after providing for the appointment of an in-
spector general, further provides, that he shall have power to
appoint deputies, removable at his pleasure, for whose official
conduct he shall be answerable; and he shall take bonds of
them to himself and his successor in office, with sufficient
sureties, in a sum not exceeding $1000.

*April 7th*

The statute does not distinctly declare how, to whom, and
to what extent, the inspector general shall be liable; all these
points are left to be regulated by the rules and principles of
the common law, and to be adapted to the circumstances, as
they may arise.

No question is made, in the present case, that any person
purchasing fish branded in pursuance of the statute, on the
faith of the brand, is entitled to his remedy, if, through the
default of the deputy, it turns out that such fish were not of
the quality and condition indicated by the brand; and it is
easy to perceive, that the statute would fall far short of ac-
complishing the purposes for which it was manifestly designed,
if it did not go to this extent.

1. In regard to the first exception, we think it cannot be
sustained.

The statute does not require that a suit shall be commenced,

in the first instance, against the deputy, and a judgment obtained against him, before proceeding against the principal; and there is no rule of the common law and no analogy, which requires it. In the case of sheriffs, which is nearly analogous, by the common law, no action lies against the deputy ; but it must be brought against the sheriff only. In this commonwealth, it has been held, that the party aggrieved by the default of the deputy, may have his election, to proceed against the deputy, or against the sheriff in the first instance. Suppose this case to be analogous, it would not prevent the plaintiff from proceeding against the defendant as inspector general in the first instance. There is no rule of justice or policy, in the absence of positive regulation, which seems to us to require it.

2. Nor do we perceive any ground for sustaining the second exception.

The responsibility declared by the statute, which the principal shall be under, for his deputy, is unlimited. There might be good reasons of expediency, why the inspector general, who has an entire control over his deputy, should be restrained from requiring excessive bonds of him, without supposing that by any implication the same amount was intended as a limit to the liability of the principal. It may be well, and tend to secure better appointments of deputies, to make the principal to some extent liable for the capacity and fidelity of his deputies, without sureties for his indemnity. The law is an important one to the commerce and industry of the commonwealth, the fees provided for inspection are liberal, adapted, we presume, to be an adequate compensation for labor and responsibility ; and we think that responsibility ought not to be narrowed by any strained implication, beyond what the liberal policy and the useful and beneficial objects of the statute require.

3. And we entertain the same opinion, in respect to the third exception.

There are few cases, in which a jury can be instructed that any evidence for their consideration is conclusive. Here the fact, that the fish had undergone a re-inspection at Baltimore, was important as evidence, and if the fish had passed an

inspection there, showing that they were conformable to the brand, it would be certainly very strong evidence against the alleged default in the former inspection ; but we cannot see how it would be conclusive.   As evidence the defendant had the full benefit of it ; and the only subject of exception is, that the jury were not instructed that it was conclusive.

4.  The fourth exception has been a subject of much consideration, as to the rule of damages, by which the jury were to be governed, if they found for the plaintiff ; and we are of opinion that the rule laid down at the trial was correct.

We are not at all disposed to disturb the rule, that on a breach of contract to deliver goods or transfer stock &c., the measure of damages is the value of the goods or stock at the time and place, where, by the contract, they were respectively made deliverable.   And this was the rule laid down in the case of *Shaw* v. *Nudd*, cited at the argument.

But in the present case, it is to be considered that the very object and purpose of the inspection is, to prepare the fish for exportation.   After inspection, by common consent, the brand is to stand in the place of all other evidence of quality and condition, as between buyer and seller ; and would probably be deemed conclusive, upon all questions of warranty, and alleged fraud, as between those parties.   The main purpose of this statute is, to secure such a careful inspection, as to make the brand the true index of the contents.   It is further to be considered, that when fish are thus purchased for exportation, it is not expected that they will be opened, or examined, or that the quality can be discovered, until they reach the place to which they are exported.   Such is the time and place, at which the default in the inspection must be expected to be discovered.   We think it consistent with justice, and the plain rule of allowing an indemnity, that the purchaser should recover the difference between the actual value of the fish, as they turn out at such place, and the value which the fish would have had at the same time and place, if they had been of the quality and in the condition indicated by the inspection.   This of course is to be taken with this qualification, that they are exported within the usual and reasonable time, after inspection, that they are exposed to no extra-

23 *

Pearson
*v.*
Purkett.

ordinary heat or other cause of damage, and that they are exported to no remote or unusual place, but to any of the ports or places to which the like kind of fish are usually exported from the same market. This was the rule prescribed at the trial, and we think it does not exceed the limits of a reasonable and actual indemnity.

5. The next exception presents a question of great importance to this branch of the public economy, and requires a construction of the statute providing for the inspection of pickled fish, deeply affecting the commercial interests of the commonwealth.

The instruction to the jury substantially was, that the brand is, in some sort, an assurance and warranty, that the fish are, and for a reasonable time, and within reasonable limits, shall continue to be, of the quality and condition in dicated by the brand, that is, as required by the statute, that they were caught in the right season, were well struck with salt in the first instance, and have been well preserved sweet, and free from rust, taint or damage ; and that if within a reasonable time, without improper exposure, they become unmerchantable, the inspector is answerable. The declaration, if we may judge from the very brief abstract of it contained in the report, proceeds on the same principle. After averring that the deputy of the defendant inspected and branded the fish, it further alleges, that the fish were not well struck with salt or pickle, by which means the plaintiff sustained damage, without any allegation of want of fidelity, skill, or care on the part of the inspector.

Is this the true nature of the responsibility, intended to be charged upon the inspector and his deputies, by the statute ?

The statute, (§ 2,) after providing that the inspector general shall have power to appoint deputies, adds, " for whose official conduct he shall be answerable." In the next preceding statute (*St.* 1803, *c.* 55,) of which the present is a revision, the words were, " for whom he shall be answerable." Probably in legal effect the provisions are alike, the latter being a little more precise in form. The effect is, that the inspector general shall be answerable for the appointment of deputies suitably qualified in point of skill, capacity and

fidelity, and that he shall be responsible, that they faithfully perform the duties they undertake.

The 3d section provides, that it shall be the duty of the inspector general or his deputies, to see that the fish have been well struck with salt or pickle in the first instance, and preserved sweet, free from rust, taint, or damage. Another clause in the 2d section requires that the inspector shall give bond for the faithful discharge of his duty, and shall be sworn faithfully to perform the same. And in like manner it directs, that the deputies shall be sworn to the faithful discharge of their duty.

The 8th section imposes a penalty upon the inspector or either of his deputies, who shall brand any cask, the contents of which he has not inspected, packed, salted, and coopered, according to the true intent and meaning of the act, or shall permit any other person to use his brands in violation or evasion thereof. The 2d section requires the governor, with advice of the council, to appoint an inspector general of all pickled fish, to be exported from the commonweatlh, who shall be well skilled in the quality of the same.

From these clauses and provisions, as well as the general scope, tenor and purposes of the statute, and more especially from the nature of the subject, we are of opinion, that the duty of the deputy, for the performance of which the inspec-tor general is answerable, embraces the possession and exer-cise of requisite skill, the diligent and careful application of this skill, and strict fidelity. In other words, we think the true ground of the responsibility of the deputy, is negligence and not warranty, and that this responsibility has its effect, whenever there is a want of requisite skill, care, or fidelity.

Perhaps it may be thought, that this kind and degree of responsibility is not sufficient to secure the great objects of policy contemplated by the statute ; but we think this objec-tion will vanish, when we consider the nature of the respon-sibility, which the rule, as we understand it, imposes. Like professional men, artists, officers, and all other persons, who undertake for hire or reward to perform labor requiring skill, they are bound at their peril, to bring to the performance of the labor, the degree of skill and care, which are necessary

Pearson
v.
Purkett.

according to the subject matter, and the nature of the duty to the complete and effectual performance of it ; and any degree of skill and care, which falls short of this, is, in lega. contemplation, negligence. So of professional men, as surgeons and attorneys, who are required to possess all the knowledge and skill requisite to the duties of those professions, according to the state of science and improvement in them, at the time. So of artists, who undertake for skill, as painters, watchmakers, jewellers ; and so of farriers and artisans of all sorts. So of persons who undertake to transport goods, and especially for hire, as ship-masters, pilots, masters and engineers of steamboats, drivers and managers of stage coaches ; and so of various classes of public officers, whose fees are fixed by law, as sheriffs and their deputies, coroners and notaries public. Whatever skill is requisite to the performance of the functions of any of these persons, (and to many of them much knowledge and skill are necessary,) they are bound to have it and diligently and faithfully to exercise it.

The argument was much pressed, that it is easy for a person of skill to determine whether fish have been well struck with salt or pickle, by the simple use of the senses, four of which are concerned in the determination, namely, sight, smell, taste, and touch ; and therefore it could be hardly said, that the inspector would be held responsible for error of judgment, because the judgment is scarcely exercised at all in coming to a true result. But it must be considered that this argument has a double aspect. If it be easy thus to determine, should a cask of fish be found duly branded, which is yet bad on account of not being well struck with salt, the conclusion is inevitable, that the inspector was deficient in skill, care, or fidelity. But whether it is thus easy, and whether the fish so found have been exposed to any other cause of damage, are questions of fact, and it is for the jury to find them and to draw the inference.

In all these cases of labor requiring skill, if the work be badly done, or loss, damage, or failure ensue, and the proof of such damage or failure does not carry the justification or excuse along with it, this is *primâ facie* evidence of negligence or want of skill or fidelity, which the party must remove by

satisfactory proof, or stand to the consequences. As where a stage coach is overset or breaks down on a plain road, a vessel under charge of a pilot is run aground in good weather, or any similar failure happens unaccounted for, the fact is strong evidence of negligence, and conclusive if not rebutted. But, as already stated, it is fact and not law, and it is for a iury to draw the inference.

On these grounds the Court are all of opinion, that there ought to be a new trial.